IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3198-D

| | | |
|---|---|---|
| DARRELL JAMES DEBREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRANDON BROOKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On November 1, 2010, Darrell James DeBrew ("DeBrew" or "plaintiff"), a federal inmate proceeding pro se, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) [D.E. 1]. DeBrew originally sought leave to proceed in forma pauperis [D.E. 2], but paid the filing fee on November 29, 2010. On December 6, 2010, DeBrew filed a "motion to order release of filing fee and equitable tolling" [D.E. 6].

The court now conducts a frivolity review under 28 U.S.C. § 1915A. As explained below, plaintiff has failed to state a claim upon which relief may be granted, and the complaint is dismissed. Additionally, the court denies as moot DeBrew's motion to order release of filing fee and equitable tolling.

I.

DeBrew is incarcerated at the Federal Correctional Complex in Butner, North Carolina ("Butner"). Compl. ¶ 3. DeBrew asserts eight causes of action in his complaint, many of which relate to his self-employment as a published author.

First, DeBrew asserts that in December 2007, and "[o]n or about February 20, March 6, 7, & 12" of an unspecified year, he requested administrative remedy forms but was denied "the

requested amount of" administrative remedy forms. See id. ¶¶ 21–22, 50–52. DeBrew alleges that defendants Ford, Brooks, Collins, and Faucett, all counselors and case managers at Butner, have directly refused to provide him with administrative remedy forms, and that defendants Johns, White, Watts, and Lappin, all high-level Bureau of Prisons ("BOP") officials, "support this practice of limitation." Id. ¶¶ 22, 50–51. DeBrew further alleges that on November 13, 2007, defendant Ford "refused to accept three administrative remedies from Plaintiff." Id. ¶ 21. DeBrew contends that these actions violate his "First Amendment Rights: Right to Petition; Freedom of Expression; and Right to Access Courts." Id. ¶ 23; see id. ¶¶ 52, 58, 63.

Next, DeBrew challenges two occasions on which he did not receive mail addressed to him. DeBrew alleges that "on or about June 12, 2009, a letter and several checks were delivered to Butner's Federal Prison Complex, in Plaintiff's name" via Fed Ex, but "were returned to the sender a month later when DeBrew complained that he hadn't received his mail from the mailroom and had proof." Id. ¶¶ 24–25. DeBrew holds defendants Candice Gregory, a mail room supervisor, and John Doe, a "mail room employee under Candice Gregory," "responsible for violating DeBrew's First Amendment Rights to mail delivery." Id. ¶¶ 10, 17, 26; see id. ¶ 59. DeBrew further alleges that on May 24, 2010, the BOP rejected a "Priority mail Package, addressed to . . . DeBrew," because of a BOP Policy stating that an item weighing sixteen ounces is considered a package, thereby violating DeBrew's "right to receive[] mail as guaranteed by the First Amendment." Id. ¶¶ 56–57; see id. ¶ 63. DeBrew does not connect any defendant to this incident of mail rejection, but blames "Defendant Lappin's Policy" for the rejection of the package. Id. ¶ 65.

Next, DeBrew challenges two disciplinary convictions. First, DeBrew alleges that "[o]n or about April 16, 2009 Plaintiff turned in a check that he received in the mail" and "[d]efendant SIS

2

Lieutenant Dodson wrote DeBrew an incident report for Conducting a Business, Code 408, for which he was found guilty." Id. ¶¶ 27–28, 31. Defendants Johns, White, Eichenlaub, and Lappin, all high-level BOP officials, "upheld the incident report" even though DeBrew "never received the UDC Report, for which he presented as a defense." Id. ¶¶ 29, 32–33. DeBrew alleges that the disciplinary infraction and conviction "violated DeBrew's First Amendment Rights to publish and his Due Process right to receive a copy of the UDC Report." Id. ¶ 60. Second, DeBrew asserts that he was wrongfully charged with and convicted of "'Refusing a Work Assignment or Program Assignment'" for refusing to submit a DNA sample, even though DeBrew informed defendants Collins and Brooks "there were no memos about the DNA act changing . . . . [and] that submitting a DNA sample doesn't constitute a Work Assignment or a Program before they found DeBrew guilty." Id. ¶¶ 35–36, 38, 42. Defendants Johns, White, Watts, and Lappin "upheld the incident report, though no notice was given." Id. ¶¶ 39, 43. DeBrew contends that the conviction "deprived DeBrew of his right to be Notified of Law changes and to be found guilty of the correct charge and" failed to meet the required evidentiary burden for a disciplinary conviction. Id. ¶ 61.

Next, DeBrew alleges that he suffered retaliation at the hands of defendant Brooks after "DeBrew invoked his Constitutional Right to speak-out against several activities of Defendant . . . Brooks." Id. ¶ 45. DeBrew alleges that Brooks twice refused to allow DeBrew "to finish[] some legal work . . . . even after being ordered by a superior," which "caused DeBrew great trouble with his intent to deny/impede/frustrate DeBrew from making a legal deadline." Id. ¶¶ 46–48.

Finally, DeBrew asserts that "[o]n or about September 10, 2010, DeBrew sent approximately $352.00 from his prison account to Investors Business Daily" but by "[o]n or about October 21, 2010 the money hadn't arrived at Investors Business Daily, though the money had been deducted from

3

DeBrew's account." Id. ¶¶ 53–54. DeBrew asserts that the failure to deliver the payment as directed "deprived DeBrew of his money without due process of law." Id. ¶ 64. For all of his claims, DeBrew seeks declaratory relief and "Punitive, Nominative, and Compensatory [damages] against all defendants for each act" in the amount of $50,000. Id. at 10–12.

II.

Courts must review complaints in civil actions in which prisoners seek relief from a governmental entity or officer, and dismiss a complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)–(b)(1). A case is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Claims that are legally frivolous are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Claims that are factually frivolous lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325. The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted).

DeBrew's claim concerning the denial of administrative remedy forms is frivolous. A prisoner has no constitutional right to participate in the grievance process. See Adams, 40 F.3d at 75. Moreover, to the extent DeBrew attempts to assert a claim against high-level BOP officials for allowing prison staff to deny his requests for administrative remedy forms, "[i]n a Bivens suit, there is no respondeat superior liability. Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (citation omitted);

4

see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, plaintiff fails to state a claim against any defendant concerning administrative remedy forms.

As for DeBrew's claim concerning two instances of non-delivery of mail to him,[1] assuming that DeBrew has a generalized First Amendment right to send correspondence to persons of his choosing, see, e.g., Thornburgh v. Abbott, 490 U.S. 401, 411–12 (1989), he has no such unqualified right to receive mail, particularly packages, which "are handy devices for the smuggling of contraband." Bell v. Wolfish, 441 U.S. 520, 555 (1979). Quite understandably, the BOP has a number of regulations concerning mail received by inmates. See, e.g., Thornburgh, 490 U.S. at 415–19 (addressing BOP regulations governing incoming publications); United States v. Gordon, 168 F.3d 1222, 1228 (10th Cir. 1999) ("In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is 'essentially an administrative matter in which the courts will not intervene.'" (quoting Wilkerson v. Warden of U.S. Reformatory, El Reno, Okla., 465 F.2d 956,

---

[1] To the extent DeBrew seeks monetary relief on his First Amendment mail claim, he is not entitled to such relief:

> [T]he Supreme Court has explicitly refused to acknowledge that federal prisoners may bring a claim for monetary damages based upon an alleged First Amendment violation. See, e.g., Ashcroft, 129 S. Ct. at 1948 (noting that Court had "declined to extend Bivens to a claim sounding in the First Amendment"); see also Bush v. Lucas, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation pursuant to Bivens). Arguably, such claims have not been recognized by the Supreme Court because prisoners may pursue FTCA claims or claims for injunctive relief regardless of an inability to pursue a Bivens damages claim. See Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (noting that adequate, alternative bases for pursuing a particular claim amount "to convincing reason for the Judicial Branch to refrain from providing new and freestanding remedy in damages"); cf. 42 U.S.C. § 1997e(e) (noting that prisoner not entitled to claim for money damages where no physical injury shown).

Saleh v. United States, No. 09-cv-02563-PAB-KLM, 2011 WL 2682803, at *11 (D. Colo. Mar. 8, 2011) (unpublished).

5

957 (10th Cir. 1972) (per curiam))); United States v. Stotts, 925 F.2d 83, 84–90 (4th Cir. 1991) (addressing BOP regulations "specify[ing] how incoming mail must be marked to qualify for confidential treatment as special or legal correspondence"). Notably, DeBrew does not allege that the non-delivery of mail to him violated any BOP regulation, and his conclusory allegations concerning the two incidents do not allow the court to find a possibility that the pieces of mail were rejected for any reason other than "legitimate security interests." Turner v. Safley, 482 U.S. 78, 91 (1987).

As for DeBrew's challenges to his disciplinary infractions and convictions, to recover money damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Edwards v. Balisok, 520 U.S. 641, 643, 648 (1997) (extending Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), to inmate disciplinary convictions). "A district court must undertake a case specific analysis to determine whether success on the claims would necessarily imply the invalidity of a conviction or sentence." Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008) (per curiam) (unpublished). Although Heck does not apply to all suits challenging prison disciplinary proceedings,[2] DeBrew claims violations of his due process rights and challenges the sufficiency of the evidence against him. Thus, DeBrew challenges the validity of his disciplinary convictions. See Edwards, 520 U.S. at 645–47. Because DeBrew's disciplinary convictions have not been overturned

---

[2]See Muhammad v. Close, 540 U.S. 749, 751 (2004) (per curiam) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.").

6

or otherwise invalidated, DeBrew cannot proceed with his <u>Bivens</u> claims concerning his disciplinary convictions. Moreover, DeBrew's substantive arguments concerning the DNA Act, 42 U.S.C. § 14135a, are doomed in light of <u>Jones v. Murray</u>, 962 F.2d 302, 306–07 (4th Cir. 1992). See <u>Loparo v. Unnamed Defendants</u>, No. 7:06-CV-00654, 2006 WL 3359586, at *2 (W.D. Va. Nov. 20, 2006) (unpublished).

As for DeBrew's claim of retaliation, the Fourth Circuit has described how to review such claims:

> [I]n forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [28 U.S.C.] § 1915[(e)(2)(B)]. To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . penal institutions.

<u>Adams</u>, 40 F.3d at 74. To survive frivolity review, DeBrew "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Id.</u> at 75. DeBrew presents nothing more than naked assertions of retaliation. Moreover, DeBrew's allegations fail to allege that defendant Brooks infringed any constitutionally protected right. To the extent that DeBrew asserts that Brooks interfered with his right of access to the courts, DeBrew must show actual injury or that his efforts to pursue a legal claim were hindered. See, e.g., <u>Lewis v. Casey</u>, 518 U.S. 343, 351–52 (1996); <u>Michau v. Charleston County</u>, 434 F.3d 725, 728 (4th Cir. 2006). DeBrew only makes conclusory assertions that Brooks interfered with his access to the courts and has not alleged any actual injury. Thus, the court dismisses DeBrew's claim of retaliation for failure to state a claim upon which relief may be granted.

7

As for DeBrew's due process claim concerning the failure to deliver his payment to Investors Business Daily, the claim fails. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the inmate has an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533–34 (1984). Here, once DeBrew properly exhausts administrative remedies, DeBrew may pursue a claim under the Federal Tort Claims Act ("FTCA"). However, the United States is the only proper defendant to a claim under the FTCA. See 28 U.S.C. §§ 1346(b), 2674, 2679; Iodice v. United States, 289 F.3d 270, 273 n.1 (4th Cir. 2002). Thus, the court dismisses DeBrew's constitutional claim concerning the deprivation of property.

### III.

Finally, the court offers a word of caution to DeBrew. A complaint may be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(A), which provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that... the allegation of poverty is untrue." According to DeBrew's complaint, he earns income from his published works. See, e.g., Compl. ¶¶ 24, 27–28, 31, 53. In fact, on November 29, 2010, within a month of filing his complaint and IFP application, DeBrew had $2,611.15 in his inmate trust account. See Mot. Release Filing Fee, Att. 2 (DeBrew's inmate trust account statement). Thus, it appears that DeBrew's statements on his in forma pauperis ("IFP") application, disavowing any earned income since 1990, were false.

> The ability to proceed IFP is a "privilege provided for the benefit of indigent persons." Chung v. Dushane, 03 Civ. 5955, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003); see also Hobbs v. County of Westchester, 00 Civ. 8170(JSM) 2002 WL 868269, at *1 (S.D.N.Y. May 3, 2002) ("The purpose of the statute permitting litigants to proceed in forma pauperis is to insure that indigent persons have equal access to the judicial system."). Additionally, "the court system depends on the

8

honesty and forthrightness of applicants to ensure that the privilege is not abused." Chung, 2003 WL 22902561, at *2.

To discourage abuse of this privilege, the statute provides that "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(a); accord Anderson v. Coughlin, 700 F.2d 37, 42 (2d Cir. 1983) (citation omitted). "[T]he purpose of this provision is to 'weed out the litigants who falsely understate their net worth in order to obtain in forma pauperis status when they are not entitled to that status based on their true net worth.'" Hobbs, 2002 WL 868269, at *2 (quoting Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir.1997)); accord Matthews v. Gaither, 902 F.2d 877, 881 (11th Cir. 1990). The 1996 amendment to the IFP statute reinforced the mandatory nature of the requirement of dismissal for false allegations of poverty. Compare 28 U.S.C. § 1915(e) ("shall dismiss"), with former statute 28 U.S.C. § 1915(d) ("may dismiss"); see also Mathis v. New York Life Ins. Co., 133 F.3d 546, 547 (7th Cir. 1998) (noting requirement of mandatory dismissal for false allegations of poverty under amended statute).

Cuoco v. U.S. Bureau of Prisons, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004); see Moorish Nat'l Republic v. City of Chicago, No. 10 C 1047, 2011 WL 1485574, at *2 (N.D. Ill. Apr. 18, 2011) (unpublished). "Dismissal with prejudice is appropriate when an applicant misrepresents her financial arrangements in bad faith to obtain IFP status." Cuoco, 328 F. Supp. 2d at 468 (citations omitted); see Berry v. Locke, No. 1:08cv697 (JCC), 2009 WL 1587315, at *7 (E.D. Va. June 5, 2009) (unpublished). Moreover, the fact that DeBrew subsequently paid the filing fee before the court could rule on his IFP application is no defense: "[w]hether the false statements actually result in a grant of in forma pauperis status or other relief is irrelevant under § 1915(e)(2)(A)." McRoyal v. Commonwealth Edison Co., 263 F. App'x 500, 502 (7th Cir. 2008) (per curiam) (unpublished).

Although the court does not have a record before it sufficient to make findings regarding the statements on DeBrew's application, the court cautions DeBrew that making misrepresentations in documents filed with the court is a serious matter, and could subject him to sanctions if he is found to have abused the judicial system with some other filing.

IV.

In sum, the court finds that plaintiff has failed to state a claim upon which relief may be granted. This complaint is DISMISSED. Having received plaintiff's payment of the filing fee, the court DENIES AS MOOT plaintiff's "motion to order release of the filing fee and equitable tolling" [D.E. 6].

SO ORDERED. This 22 day of July 2011.

JAMES C. DEVER III
United States District Judge